UNITED STATES DISTRICT COURT
THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

JOHN SCOTT MAAS,
PLAINTIFF,

VS.  CAUSE NO.: 2:20-cv-00051

BP EXPLORATION & PRODUCTION INC.
& BP AMERICA PRODUCTION COMPANY,
DEFENDANTS.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER FOR INTERLOCUTORY REVIEW AND FOR STAY OF PROCEEDINGS PENDING INTERLOCUTORY APPEAL**

Defendants, BP Exploration & Production Inc. and BP America Production Company (collectively, "BP"), respectfully submit this Memorandum of Law in Support of their Motion to Certify Order for Interlocutory Review and for Stay Of Proceedings Pending Interlocutory Appeal.

**I.  INTRODUCTION**

Plaintiff John Maas is a class member bound by the terms of the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement ("MSA"). Plaintiff brought this toxic tort personal injury action pursuant to the MSA's Back-End Litigation Option ("BELO") provisions.[1] These provisions require that Plaintiff prove (1) his "level and duration … of exposure" to spill-related contaminants[2] and (2) that his Later-Manifested Physical Condition[3] ("LMPC") was

---

[1] S*ee In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, April 20, 2010*, No. 10-md-2179, Doc. No. 8217 (E.D. La., January 11, 2013) (Order and Reasons Approving the MSA) at 6 ("Reasons Order

[2] "The level and duration of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the Deepwater Horizon and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES.' MSA § VIII(G)(3)

[3] MSA § II(VV): [LMPC] shall mean a physical condition that is first diagnosed in a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER after April 16, 2012, and

"legally caused" by this exposure. MSA § VIII(G)(3). To put a finer point on it, BELO plaintiffs must establish, through expert testimony, both the level and duration established in the scientific literature to cause the complained-of condition[4] (*i.e.*, threshold dose) and the level and duration (*i.e.*, dose) of their own exposure (which necessarily must be higher than the threshold dose.).[5]

Here, BP moved for summary judgment because Plaintiff offered no expert evidence of either 1) the level and duration of exposure to any toxicant associated scientifically with the development of asthma and reactive airways disease, or 2) the level and duration Plaintiff's exposure to a toxicant that caused his LMPCs. (Doc. No. 85). The only evidence of Plaintiff's "duration" of exposure is his own testimony about the number of days and hours worked during the spill response and his assumption that he was exposed to "Corexit" (Corexit® is a brand of

---

    which is claimed to have resulted from such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, or other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or exposure to dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, where such exposure occurred on or prior to September 30, 2010, for ZONE A RESIDENTS; on or prior to December 31, 2010, for ZONE B RESIDENTS; and on or prior to April 16, 2012, for CLEAN-UP WORKERS.

4    "[D]istrict courts within the Fifth Circuit have likewise required toxic tort plaintiffs to define 'the level of exposure necessary to produce effects' in order to establish general causation. In defining the 'level of exposure,' the precise quantity must be identified. Accordingly, with respect to general causation, BELO plaintiffs 'must prove, at minimum, that exposure to a certain level of a certain substance for a certain period of time can cause a particular condition in the general population.'" *Lee v. BP Expl. & Prod., Inc.*, No. 18-10381, 2020 WL 6106889, at *4 (E.D. La. Sept. 29, 2020)

5    "In the absence of admissible expert testimony regarding the harmful level of exposure to Corexit and/or oil, plus knowledge that [plaintiff] was exposed to such quantities, [plaintiff] cannot establish that his exposure to these chemicals caused his medical conditions." *McGill v. BP Expl. & Prod.*, 2019 WL 6053016, at *4 (S.D. Miss. Nov. 15, 2019), *aff'd*, 830 Fed. Appx. 430 (5th Cir. 2020). "[A] plaintiff cannot establish specific causation through the medical expert's testimony if the medical expert 'does not know the extent of [the plaintiff's exposure to [the chemical] or oil' … the Fifth Circuit requires medical experts offering specific causation opinions to have '[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities.'" *Williams v. BP Expl. & Prod.*, 2019 WL 6615504, at *9 (E.D. La. Dec. 5, 2019).

dispersant) during this time. *See e.g.,* (Doc. No. 102-2). The undisputed environmental, industrial hygiene, and sampling data shows Plaintiff was at least 24 miles from the nearest dispersant application spray during his response work. (Doc. No 102-1 at 86-87).

In addition, Plaintiff failed to produce any evidence related to his "level" of alleged exposure to dispersant. Although the Court cites to the record multiple times noting "duration" of exposure, it incorrectly accepts that "minimal Corexit exposure can cause severe cell damage" as sufficient for "level" even though the Sixth Circuit and other courts reject such a standard. *See Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 679 (6th Cir. 2011) (rejecting a "no safe level" argument while also noting such opinions are "pure conjecture."); *see also Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1165 (E.D. Wash. 2009) ("The use of the no safe level … flies in the face of the toxicological law of dose-response.") (internal quotations omitted). Indeed, Plaintiff's experts admitted that they did not quantify Plaintiff's exposure to any potential toxicant. (Doc. No. 86 at 6-8). Instead, Plaintiff's experts concluded that his self-reported exposure to dispersant was automatically "enough," both as a quantification and as a level and duration scientifically associated with his LMPCs. *Id.* at 7. This is classic *ipse dixit*.

The Court, however, denied BP's Motion, concluding that Plaintiff's experts were not required to identify any particular toxicant in the dispersant or the level of exposure to that toxicant scientifically associated with the conditions claimed. (Doc. No. 115 at 6). The Court held specifically that Plaintiff "does not have to establish he was exposed to a specific dose of Corexit to establish causation." *Id.* The Court found that "BP's arguments merely go to the weight, as opposed to the admissibility of the expert testimony" in this case."[6] *Id*.

---

[6] BP acknowledges that oftentimes the reasonableness of an expert's factual assumptions is a matter for cross-examination. But an exception is where the expert's assumptions – even if true – fall short of established legal standards. That is the situation here, where

3

BP respectfully asks the Court to certify its denial of BP's Motion for Summary Judgment for interlocutory appeal because its holding that a BELO plaintiff "does not have to establish he was exposed to a specific dose of Corexit to establish causation" conflicts with holdings of other courts and, in BP's view, cannot be reconciled with the MSA's language. Since 2015, there have been over 5,000 BELO lawsuits filed in federal courts throughout the Gulf region. The issues presented by these claims, including the expert evidence needed to establish causation, have been the subject of numerous decisions by the Fifth Circuit and other district courts. These courts have consistently dismissed BELO claims without quantified exposures and no defined threshold level of toxic effect. Indeed, these courts require BELO plaintiffs to prove the level and duration of exposure to a specific toxicant that scientifically can cause the condition claimed and that the plaintiff's alleged exposure caused the condition. This important question merits interlocutory review.

## II.     ARGUMENT

The Court has discretion to permit an immediate appeal of an interlocutory order if it concludes that "such order (1) involves a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also, In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002); *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 (6th Cir. 1992).[7]

---

[7] the Sixth Circuit has held that a quantification or dose of exposure is a necessary element of proof of causation. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 679 (6th Cir. 2011). BP reserves its right to appeal under 28 § U.S.C. 1292(a)(3) and Fed. R. App. P. 4(a)(1)(A) in the event the Court denies BP's request for interlocutory review.

### A. **<u>Whether Plaintiff is required to prove the level and duration of his alleged exposure to a specific toxicant that can legally cause his alleged conditions under the MSA's BELO provisions is a controlling question of law.</u>**

Thousands of BELO lawsuits have been docketed in federal courts and continue to be filed by MSA class members. To date, less than 200 remain as a result of the consistent application of the MSA's BELO provisions that is critical to the efficient handling of that docket. The Sixth Circuit has "set a low bar for a determination that a question of law is 'controlling' in the context of a motion for certification under § 1292(b)." *Lofgren v. Polaris Indus. Inc.*, 526 F. Supp. 3d 322, 326 (M.D. Tenn. 2021) (internal citation omitted). The measure of exposure that is required of a BELO plaintiff to satisfy the MSA's requirement is a controlling question of law because its resolution "could materially affect the outcome of th[is] case" and many others. *In re City of Memphis*, 293 F.3d at 351; *see, e.g.*, *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992).

The Court's ruling concerns a required element of a BELO claim. The MSA expressly requires a BELO plaintiff to prove his level and duration of exposure to a toxicant and that the exposure caused his LMPC. MSA § VIII(G)(3). This requires expert quantification of exposure, expert evidence of the threshold level of effect, and expert evidence of specific causation. Because Plaintiff produced no expert evidence that established the level and duration of his claimed exposure to any identified toxicant, or the threshold level of toxic effect, his claim failed as a matter of law. *See McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020) (observing that because the record was void of an exposure level analysis the expert's conclusion had an "analytical gap between the facts he relies on and the conclusion."); *see also Becnel v. BP Expl. & Prod., Inc.*, No. CV 17-1758-SDD-EWD, 2021 WL 4444723, at *3 (M.D. La. Sept. 28, 2021) (granting summary judgment based on plaintiff's lack of dose analysis because "without dose data, conclusions and opinions on causation are speculative and unreliable.").

5

Therefore, this prong is satisfied because the determination of this question would "materially affect the outcome of the case" and result in the case's dismissal.

   B. **There is substantial ground for difference of opinion regarding how to interpret the MSA's requirement that BELO plaintiffs prove the level and duration of exposure and establish legal causation.**

Because so many other courts enforcing the terms of the MSA have reached a conclusion that differs from the Court, there is "substantial ground for difference of opinion." *See In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (a substantial ground for difference of opinion exists when "the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions.") (internal quotations omitted). This prong is readily met.

Importantly, this is the first case in the Sixth Circuit that has been asked to apply the toxic tort causation standard in a BELO case. Under the express terms of the MSA, every BELO plaintiff is required to prove the "level and duration" of his alleged exposure and that it "legally caused" his injury. MSA § VIII(G)(3). To allow Plaintiff to establish legal causation without scientific expert testimony as to the threshold level and duration of exposure to an identified toxicant to cause the claimed conditions, and that Plaintiff's exposure exceeded that level to cause his asthma and reactive airways disease, runs afoul of the long line of BELO decisions from other courts. *See McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020) ("We affirmed the exclusion of expert testimony on causation … because there was no evidence of the level of exposure."); *In re Deepwater Horizon Belo Cases,* No. 3:19CV963, 2020 WL 6689212, at *9 (N.D. Fla. Nov. 4, 2020) ("[E]xpert testimony must demonstrate the levels of exposure that are hazardous to human beings."); *Lee v. BP Expl. & Prod., Inc.*, No. 18-10381, 2020 WL 6106889, at *4 (E.D. La. Sept. 29, 2020) (explaining that an expert cannot establish causation when they "provide no clue regarding what would be a harmful level of chemical

6

exposure." (cleaned up); *Williams v. BP Expl. & Prod., Inc.*, No. 18-9753, 2019 WL 6615504, at *8 (E.D. La. Dec. 5, 2019) ("Plaintiff must prove, at minimum, that he personally experienced a level of exposure to a certain substance over a certain period of time that caused his [injuries]."). Since the Court's opinion is contrary to those of other courts applying the toxic tort standard consistent with the provisions of the MSA, a difference of opinion now exists with established BELO precedent.

### C. **An immediate appeal would materially advance the case towards resolution if the Order is reversed.**

An immediate appeal materially advances the ultimate termination of the litigation if reversal of the order "would substantially alter the course of the district court proceedings or relieve the parties of significant burdens." *Gaylord Ent. Co. v. Gilmore Ent. Grp.*, 187 F. Supp. 2d 926, 957 (M.D. Tenn. 2001). Here, the Sixth Circuit's reversal of the Order would materially advance the ultimate termination of the litigation because it would result in a dismissal of the case. The case's termination would eliminate significant burdens for both the parties and the Court. *See Winnett v. Caterpillar, Inc.*, No. 3:06-cv-00235, 2007 WL 2123905, at *6 (M.D. Tenn. July 20, 2007) ("An interlocutory appeal materially advances the ultimate termination of the litigation when it 'save[s] judicial resources and litigant expense.'"). This prong is of particular importance here because resolution of this issue would end litigation before additional motion practice is required and possible trial. *See Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 876 (E.D. Mich. 2012) ("[C]ertification for interlocutory appeal is more appropriate before the parties have incurred substantial time and expense on the litigation."). In addition, the differences in opinion between the Court's decision and those of prior BELO cases carries a potential to affect the consistency of the larger docket of BELO cases, making meaningful

appellate review now all the more important. Therefore, an interlocutory appeal may materially advance the ultimate termination of the litigation and supports granting same.

## III. REQUEST FOR STAY

Pursuant to 28 U.S.C § 1292(b), an interlocutory appeal does not stay proceedings in the district court unless the district court or the appellate court enters a stay order. Therefore, BP requests that should the Court certify its Order, it stay the proceedings until the Sixth Circuit elects to accept or deny interlocutory review. Should the court accept interlocutory review, BP requests a further stay pending resolution of the appeal.

## IV. CONCLUSION

In seeking summary judgment, BP asked the Court to apply the same standard – a BELO plaintiff needs to establish the level and duration of exposure to a toxicant through expert testimony – that has been uniformly applied in other federal courts. The proper application of the MSA's unambiguous terms is a controlling question and will determine whether this litigation continues. This issue is of great importance to the larger docket of BELO lawsuits, and an inconsistent, outlying ruling from the Court concerning a required element of a BELO claim could well cause further litigation and delay in the adjudication of other BELO cases pending in the federal courts. Should the Order be reversed, the litigation will end and save the parties and the Court the time, expense, and resources necessary for future motion practice and trial. BP requests that the Court certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b) and issue a stay pending resolution of the appeal.

Respectfully submitted this the 31[th] day of December 2021.

                                            MARON MARVEL BRADLEY
                                            ANDERSON & TARDY LLC

                                            */s/ Howard E. Jarvis*
                                            Howard E. Jarvis

8

Case 2:20-cv-00051   Document 120   Filed 12/31/21   Page 8 of 10 PageID #: 1434

Chan E. McLeod *pro hac vice*
12144 Southwick Circle
Farragut, TN 37934
Phone: (865) 334-6468
Fax: (302) 425-0180
Email: hjarvis@maronmarvel.com
       cmcleod@maronmarvel.com
*Attorneys for Defendants,*
*BP America Production Company and*
*BP Exploration & Production Inc.*

## CERTIFICATE OF SERVICE

I, Howard E. Jarvis, do hereby certify that on December 31, 2021, a true and correct copy of the Defendants' Memorandum of Law in Support of Their Motion to Certify Order for Interlocutory Review and for Stay of Proceedings Pending Interlocutory Appeal was served upon Plaintiff's counsel:

William Kennerly Burger
Burger, Scott & McFarlin
12 Public Square North
Murfreesboro, TN 37130
kenburger@comcast.net

>*/s/ Howard E. Jarvis*
>Howard E. Jarvis!